UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT TRINIDAD-SUAREZ,

        Petitioner,

v.                                    Case No. 2:26-cv-710-JES-DNF

KRISTIE NOEM, et al.,

        Respondents.

_____/

<u>**OPINION AND ORDER**</u>

This matter comes before the Court on Petitioner Robert Trinidad-Suarez's Petition for Writ of Habeas Corpus (Petition) (Doc. 1) and "Emergency Motion to Compel Respondents to Facilitate Petitioner's Return to the United States, to Preserve this Court's Jurisdiction, and for Immediate Injunctive Relief" (Emergency Motion) (Doc. 8). The government has responded to both the Petition and Emergency Motion (Doc. 4; Doc. 10) and Trinidad-Suarez filed a reply to the government's response to his Petition. (Doc. 6).

For the reasons set forth below, the Petition is dismissed as moot, and the Emergency Motion is denied because the Court lacks jurisdiction to consider it.

**I.    Background and Procedural History**

On March 12, 2026, Trinidad-Suarez filed a petition for writ of habeas corpus alleging the following: Trinidad-Suarez, a native and citizen of the Dominican Republic, entered the United States

on May 13, 2021.  (Doc. 1 at 2).  Upon entry, immigration authorities issued a Form I-220A and released Trinidad-Suarez into the community.  (Id.)  Thereafter, he established significant ties to the community, including marriage to a United States citizen. (Id.)  In January of 2026, Immigration and Customs Enforcement (ICE) officials took Trinidad-Suarez into custody.  (Doc. 1 at 2). He was not issued a notice to appear and did not receive a bond hearing or individualized custody determination.  (Id. at 3). When he filed this Petition, Trinidad-Suarez did not have a final order of removal, and the government's authority to hold him without a bond hearing was unclear.  He sought release from immigration custody.  (Id. at 11).

On April 6, 2026, the government responded to the Petition. (Doc. 4).  The government generally agreed with the history as drafted by Trinidad-Suarez, but added that "[o]n March 18, 2026, Petitioner withdrew his request to be protected from removal via the credible fear process.  He was ordered removed [subject to a final order of removal], effective as of May 6, 2021."  (Id. at 1-2).  In reply, Trinidad-Suarez argued that the withdrawal of his request was invalid because he signed the withdrawal forms "without understanding that he was relinquishing his right to seek protection from removal."  (Doc. 6 at 2).  Thus, he argues, there was never a valid removal order.  (Id.)

2

On May 5, 2026, Trinidad-Suarez was removed from the United States.  (Doc. 10 at 2).  On May 8, 2026, he filed his Emergency Motion in which he asked the Court to order his return to the United States pending the resolution of his habeas petition. (Doc. 8).  In the motion, Trinidad-Suarez again argues that he was tricked into withdrawing his credible fear review and presumably asks this Court to invalidate or stay his final order of removal. (Id.)

In their response to the Emergency Motion, Respondents argue that the original Petition is now moot and that the Emergency Motion must be denied because this Court lacks jurisdiction to consider the validity of the final order of removal.  (Doc. 10).

## II.  Discussion

### A.    Trinidad-Suarez's petition for writ of habeas corpus is moot.

Trinidad-Suarez's habeas petition was filed on March 12, 2026, before there was an administratively final order of removal. (Doc. 1 at 3).  The basis for his detention was unclear, and Trinidad-Suarez argued that he was "detained in a procedural vacuum created by the Government's failure to initiate proceedings" and sought release from immigration custody.  (Id.)  But six days after he filed the petition, Trinidad-Suarez withdrew his request to be protected from removal via the credible fear process and he

3

became subject to a final order of removal, effective as of May 6, 2021.  (Doc. 4 at 2).

Federal courts have limited jurisdiction.  Under Article III of the Constitution, our power extends only to actual "Cases" and "Controversies."  Id.  We do not issue advisory opinions or decide questions that have become academic.  See, e.g., Al Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2001).  When he was deported on May 5, 2026, Trinidad-Suarez was released from immigration custody, and the condition he sought to escape no longer existed.  Therefore, the claims raised in his habeas petition are moot.  See Djadju v. Vega, 32 F.4th 1102, 1107 (11th Cir. 2022); see also Salmeron-Salmeron v. Spivey, 926 F.3d 1283, 1289 (11th Cir. 2019) ("As a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody.").[1]

**B.   The Court lacks jurisdiction to grant Trinidad-Suarez's Emergency Motion.**

In his Emergency Motion, Trinidad-Suarez seeks an order from this Court requiring Respondents to facilitate his return to the

---

[1] Trinidad Suarez now argues only that the government improperly executed a final order of removal.  (See Doc. 8).  He does not argue a continuing injury from his prior detention that this Court can now remedy.  See discussion infra.  Moreover, the probability that he will return to the United States and be re-detained is too remote to sustain federal jurisdiction.  See, e.g., Mehmood v. United States Att'y Gen., 808 F. App'x 911, 913 (11th Cir. 2020).  Thus, no exception to the mootness doctrine applies here.

United States so that he can challenge a negative credible fear determination. (Doc. 8). He recognizes that he waived his request for review of the negative credible fear determination—which presumably expedited his removal—but argues that the government obtained the waiver "through affirmative misrepresentation." (Id. at 2).[2] Thus, Trinidad-Suarez argues, the waiver was not valid, and he should not have been deported before the negative credible fear finding was reviewed by an immigration judge. (Id. at 4). In short, Trinidad-Suarez questions the execution of his removal order.

Federal courts are "courts of limited jurisdiction." Kokkonen v. Guardian life Ins. Co. of Am., 511 U.S. 375, 377 (1994). And 8 U.S.C. § 1252(g) bars federal courts from hearing "any cause or claim" by an alien "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Id. While § 1252(g)'s jurisdictional bar does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," it does bar claims that directly relate to the "three specific

---

[2] Specifically, Trinidad-Suarez notes that the document was written in English, which he does not speak, and alleges that "the ICE officer affirmatively represented in Spanish that signing the document meant [he] had passed his credible fear process and would be brought before an immigration judge more quickly." (Doc. 8 at 2).

actions" it lists.   Jennings v. Rodriguez, 583 U.S. 281, 294 (2018).

Trinidad-Suarez argues that his removal was premature because he had a right to a review of his negative credible fear determination before he was removed.  Even if true, this "right" did not confer jurisdiction on this Court to review the execution of his removal order.  In Camarena v. Director, ICE, the Eleventh Circuit was confronted with a similar argument from petitioners who sought provisional unlawful presence waivers and argued that the government lacked authority to remove them because the "waiver process contains within it a 'regulatory right' to remain until that process is resolved."  988 F.3d 1268, 1272 (11th Cir. 2021). The court concluded that "this argument runs headlong into § 1252(g)," which "bars review over 'any' challenge to the execution of a removal order—and makes no exception for those claiming to challenge the government's 'authority' to execute their removal orders."  Id. at 1273.  The court emphasized that if it "held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order."  Id. at 1274.  Thus, "when asking if a claim is barred by § 1252(g), courts must focus on the action being challenged," and when that action is the government's execution of a removal order, the petitioner's "claims fall squarely within § 1252(g)'s jurisdictional bar."  Id.

Here, Trinidad-Suarez clearly challenges the government's execution of a removal order that he believes was obtained by misrepresentation.  But "the sole and exclusive means for judicial review of an order of removal" is "a petition for review filed with an appropriate court of appeals."  8 U.S.C. § 1252.  While the ICE agent's alleged behavior in this instance may have been reprehensible, Trinidad-Suarez offers no argument convincing this Court that it has jurisdiction to review it.

### III. Conclusion

In sum, Trinidad-Suarez is no longer in ICE custody.  There is no live controversy left to adjudicate, and the Court is powerless to grant relief for a detention that has already ended. See Zapeta v. Exec. Dir. of the Fla. Div. of Emergency Mgmt., No. 2:25-CV-00697-JLB-KCD, 2025 WL 2432501, at *3 (M.D. Fla. Aug. 22, 2025).

Likewise, the Court is without jurisdiction to review the execution of Trinidad-Suarez's order of removal.

Accordingly, it is hereby **ORDERED**:

1.   Robert Trinidad-Suarez's Petition for Writ of Habeas Corpus (Doc. 1) is **DISMISSED** as moot.

2.   Robert Trinidad-Suarez's "Emergency Motion to Compel Respondents to Facilitate Petitioner's Return to the United States, to Preserve this Court's Jurisdiction, and for Immediate Injunctive Relief" (Doc. 8) is **DENIED.**

2.   The Clerk is **DIRECTED** to terminate all deadlines, deny any pending motions, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on July 10, 2026

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

8